UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAVO FORTY-SIX, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALLSTATE INSURANCE COMPANY, et al.,<br><br>　　　　Defendants. | Case No.  26-cv-00768-RFL<br><br>**ORDER DENYING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 12, 30 |

Plaintiff Bravo Forty-Six, LLC sued Defendants Allstate Insurance Company and CSAA General Insurance Company pursuant to 42 U.S.C. § 1395y(b)(3)(A) of the Medicare Secondary Payer Act ("MSPA").  The Complaint alleges that after Medicare Advantage enrollee K.S. was injured in a car accident in 2021, Meritage Health Plan and Meritage Medical Network (together, "Meritage") made at least $20,036.08 in Medicare payments related to K.S.'s medical treatment. (Dkt. No. 1 ("Compl.").)  The Complaint alleges that Allstate and CSAA, who insured K.S. and the at-fault driver, respectively, were required to reimburse Meritage under the MSPA once they settled with K.S. related to the car accident.  Bravo alleges that Meritage assigned it the claims related to K.S.'s Medicare payments.

Allstate and CSAA move to dismiss the Complaint, arguing that Bravo lacks Article III standing, and that it fails to state a claim.  (Dkt. Nos. 12, 30.)  For the reasons discussed below, the Motions to Dismiss are **DENIED**.  This Order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

***Background on the MSPA Private Right of Action***.  The Medicare Advantage Program allows Medicare beneficiaries to elect to rely on private insurers, called Medicare Assistance

1

Organizations ("MAOs"), to receive their Medicare benefits.  *See* 42 U.S.C. §§ 1395w-21 to 28.

These MAOs often subcontract with downstream entities.  *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020) ("*ACE*").  Under the Medicare scheme, where there is overlapping insurance coverage or when a third party has an obligation to pay for an expense, the Medicare system is the "secondary payer" while insurers are "primary plan[s]."  42 U.S.C. § 1395y(b)(2).  However, MAOs can conditionally make Medicare payments on behalf of a beneficiary if a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly."  42 U.S.C. § 1395y(b)(2)(B)(i).  If a conditional payment is made, and the primary plan's "responsibility for such payment" is later "demonstrated," as by a judgment or settlement agreement, the primary payer is obligated to make a reimbursement within 60 days.  42 U.S.C. § 1395y(b)(2)(B)(ii).

Where a primary payer fails to reimburse, the MSPA creates "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  *Id.* § 1395y(b)(3)(A).  In light of the broad wording of the private right of action and its goal of "reducing the healthcare costs borne by Medicare," at least one circuit court has found that "downstream actors that have made conditional payments in an MAO's stead or that have reimbursed an MAO for its conditional payment can bring suit for double damages against the primary payer."  *ACE*, 974 F.3d at 1312–16.

***Article III Standing***.  Defendants argue that Bavo lacks standing because the Complaint fails to plead that Meritage is a downstream entity within the Medicare Advantage Program or that Meritage made a valid assignment to Bravo.  Defendants make a facial challenge to Bravo's standing.  Therefore, the Court must "assume [the plaintiff's] allegations to be true and draw all reasonable inferences in [its] favor."  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (cleaned up), *overruled on other grounds by Munoz v. Superior Court of Los Angeles Cnty.*, 91 F.4th 977, 980–81 (9th Cir. 2024).  Standing is adequately pled.

Meritage is plausibly alleged to have suffered an injury conferring Article III standing.

The Complaint alleges that Meritage is a downstream entity—defined as "an entity that contracts with a [MAO] to administer Medicare Part C benefits directly to seniors"—of United HealthCare.  (Compl. at 1 & n. 1; *see also id.* ¶ 59.)  The Complaint further alleges that Meritage made at least $20,036.08 in "conditional" Medicare payments to K.S. "for treatment related to [her] accident."  (*Id.* ¶¶ 4, 47, 57; *see also id.* at 2.)  The Complaint alleges that Meritage has not been reimbursed.  (*Id.* ¶ 5.)  The allegation that Meritage conditionally paid money pursuant to the Medicare program and has not been reimbursed is sufficient to plausibly plead that it has suffered an injury conferring Article III standing.  Defendants argue that Meritage is required to plead the specific terms of its contract with United Healthcare.  But Meritage alleges that *it* suffered harm because *it* paid out the money and incurred the loss.  *ACE*, 974 F.3d at 1312–16.  Therefore, the details of its contractual relationship with United Healthcare need not be alleged at the pleading stage.

Bravo also plausibly pleads that it has standing based on its assignment of Meritage's claim.  In determining the standing of an assignee, a court should consider if the complaint alleges facts sufficient to "infer the who, what, and when of the assignments."  *Oaktree Capital Management, L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1081 (D. Nev. 2013).  The Complaint alleges that on May 18, 2025, Meritage assigned to Bravo, via written agreement, the rights to "all Legal Claims arising from or related to Assignor's payment of the Identified Medical Claims."  (Compl. ¶ 63.)  Bravo alleges that "[t]he rights under the MSP private cause of action pertaining to the conditionally paid medical claims for [K.S.]" is one of the "Identified Medical Claims," listed in "Schedule 1" of the assignment agreement.  (*Id.* ¶ 65.)  Although the assignment agreement is not attached, the Complaint alleges the who, what, and when of the assignment.[1]

Defendants argue that these allegations are not enough.  They cite *Brown v. Bank of America, N.A.*, 660 F. App'x 506, 509 (9th Cir. 2016), for the proposition that Bravo was

---

[1] Therefore, this Order does not rely on the agreement that Bravo attaches to its brief.  (Dkt. No. 22-2.)

required to attach the assignment agreement, including its Schedule 1, to the Complaint. (Dkt. No. 12 at 6; Dkt. No. 39 at 3.) However, *Brown* does not suggest that a plaintiff must provide documents proving assignment in response to a facial challenge to standing. Rather, in *Brown* the Ninth Circuit rejected the plaintiff's "bald assertion" of assignment of claims belonging to more than "one thousand discontented mortgagors" where the plaintiff did not "allege any facts" *or* provide exhibits in support. *Brown*, 660 F. App'x at 508–09. By contrast, Bravo has adequately alleged the "who, what, and when" of the assignment of the claim related to K.S.'s accident.

   ***Failure to State a Claim***. Defendants argue that Bravo fails to state a claim because it has not plausibly alleged that Defendants have a reimbursement obligation.[2] Under the MSPA, a primary plan's obligation to reimburse:

> may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii). The Complaint alleges that after K.S.'s accident, she submitted a bodily injury claim to the at-fault driver's auto insurer, CSAA, and an underinsured motorist claim to her auto insurer, Allstate. (Compl. ¶¶ 11, 48–49, n. 2.) The Complaint alleges that Allstate "settled" the claim with K.S. on or around March 10, 2025 for an unknown amount. (*Id.* ¶ 48.) The Complaint alleges that when Bravo informed Allstate of its reimbursement obligation, Allstate sent a check for $730.41 to Bravo, but refused to make any additional payments. (*Id.* ¶ 53.) CSAA is also alleged on information and belief to have "settled with [K.S.] for an amount that it has thus far refused to disclose to [Bravo]," on a date that is not alleged. (*Id.* ¶ 49.)

   These allegations, while sparse, are sufficient to plausibly allege that Allstate and CSAA

---

[2] CSAA and Allstate also characterize this argument as a further challenge to Bravo's standing. (Dkt. No. 12 at 6–7; Dkt. No. 30-1 at 7.) However, the analysis is the same regardless of how the argument is framed.

made a payment to K.S. "conditioned upon" her "compromise, waiver, or release" of some or all of her claims for her medical expenses related to the accident. The claims as to CSAA that were allegedly settled related to "bodily injury benefits," and are thus plausibly alleged to relate to K.S.'s claim for medical expenses against CSAA. As to Allstate's "underinsured motorist" benefits, it is also plausible to presume that at least some portion of the claim related to K.S.'s claim against Allstate for medical expenses. K.S. is alleged to have needed over $20,000 in medical care related to the accident, and the $730.41 paid by Allstate to Bravo allegedly represented K.S.'s "remaining personal injury protection coverage" (Compl. ¶ 53), implying that Allstate paid K.S. from that category of coverage already in its settlement with her. Finally, it is plausible to infer that the "settle[ment]" of K.S.'s claims against CSAA and Allstate resulted in a payment exchanged for a "compromise, waiver, or release" of K.S.'s claims against Defendants. Bravo has plausibly stated a claim.

For the forgoing reasons, Defendants' Motions to Dismiss are **DENIED**.

**IT IS SO ORDERED.**

Dated: June 15, 2026

RITA F. LIN
United States District Judge